In re NORTH REDINGTON BEACH ASSOCIATES, LTD., a Florida Limited Partnership, Debtor.

Bankruptcy No. 88–4188–8P1.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Feb. 17, 1989.

See also, 91 B.R. 166.

Langfred White, Clearwater, Fla., for debtor.

John J. Agliano, Tampa, Fla., for movant.

Lynne L. England, Tampa, Fla., Asst. U.S. Trustee.

## ORDER ON MOTION FOR RELIEF FROM AUTOMATIC STAY

ALEXANDER L. PASKAY, Chief Judge.

THIS CAUSE came on for hearing upon a Motion for Relief from the Automatic Stay or in the Alternative for Adequate Protection filed by Winfield Locks, Inc. The Court has considered the Motion, together with the record, heard argument of counsel and finds as follows:

On April 1, 1987, Debtor North Redington Beach Associates, Ltd., and Winfield entered into an agreement whereby Winfield agreed to furnish and install certain electronic locks and related equipment into the doors of the Debtor's principal asset, the North Redington Beach Hilton Hotel. Pursuant to the terms of the Agreement, the Debtor promised to pay $29,359.00 to Winfield within thirty days of the completion of the installation of the locks (Winfield's Exh. A). It appears that on April 28, 1987, Winfield filed a UCC–1 Financing Statement signed by the Debtor and Winfield (Winfield's Exh. B), which lists Winfield as a secured party, North Redington Beach Hilton as the Debtor and indicates that the financing statement covers 130 electronic locks, accompanying computers, printer and keys. It further appears that on August 18, 1987, Winfield furnished the Debtor with a statement of account indicating that Debtor had an outstanding balance of $29,522.08 owing to Winfield. It is undisputed that the Debtor has made no payments to Winfield for the electronic locks and related equipment it supplied and furnished to the Debtor. On July 25, 1988, Debtor filed its voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code, and on August 23, 1988, Winfield filed this Motion for Relief from Stay which is the Motion presently under consideration.

In its Motion Winfield seeks relief from the automatic stay provisions of § 362 of the Bankruptcy Code in order that it may foreclose its security interest in the locks and electronic equipment or to allow Winfield to continue the prosecution of its court action for breach of contract filed against the Debtor, and which is currently pending in the Circuit Court of Pinellas County. In the alternative, Winfield also seeks an Order from this Court directing the Debtor to make adequate protection payments pursuant to § 361 of the Bankruptcy Code.

In opposition to the Motion of Winfield, the Debtor contends that the relief sought by Winfield should not be granted because Winfield does not have a security interest in the collateral described in the financing statement (Winfield's Exh. B), therefore, it is not entitled to any of the alternative relief it seeks. The basis for the Debtor's contention is that since the Debtor never signed a security agreement, it never granted a security interest to Winfield in the locks and electronic equipment. In addition, the Debtor alleges that in any event, the locks and electronic equipment are subject to a first mortgage held by City Federal Savings Bank, which mortgage also provides for a security interest in favor of the Bank in all after-acquired assets of the Debtor which is superior to any interest of Winfield.

Based on the foregoing, it is evident that validity of the security interest claimed by Winfield presents a threshold question

which is whether or not the execution of a financing statement (UCC–1) admittedly signed by both the Debtor and by the secured party, Winfield, without more, is sufficient to create a security interest in the property described in the financing statement.

Article Nine of the Uniform Commercial Code which as adopted by Fla.Stat. ch. 679, et sequence, requires that in order to create a perfected security interest in a debtor's collateral, there must be "security agreement" giving the creditor an interest in collateral. Fla.Stat. 679.9–203 contains minimal requirements for the creation of a security agreement. In order to create a security agreement, there must be (1) a writing; 2) signed by the debtor; (3) containing a description of the collateral. The second document generally required is a financing statement which is filed for public record and serves the purpose of giving public notice to other creditors that a security interest is claimed in the debtor's collateral. While it is well established that a security agreement may serve as a financing statement, it is not settled whether a financing statement may serve as a security agreement. The courts having considered this issue are not in accord on its resolution. One of the earliest cases to consider this question was *American Card Company v. H.M.H. Co.*, 97 R.I. 59, 196 A.2d 150, 152 (1963) which held that a financing statement could not operate as a security interest because there was no language *granting* a security interest to a creditor. The Court in *American Card, supra,* thought that in the absence of language specifically granting a security interest that there can be no assertion that such interests exist. The Ninth Circuit in *In re Amex Protein Development Corp.,* 504 F.2d 1056 (9th Cir.1974) concluded that the word "grant" is a synonym for either "create" or "provides for" and that no magic words or precise forms were necessary to create or provide for a security interest so long as the financing statement or UCC–1 contained a description of the collateral signed by the debtor, then it can serve as a security agreement. Other courts have read the financing statement in

conjunction with other documents executed by the parties to satisfy the requirements of Article 9. See *In re Numeric,* 485 F.2d 1328 (1st Cir.1973); *In re Penn Housing Corp.,* 367 F.Supp. 661 (W.D.Pa.1973) Winfield cites the case from the Fifth Circuit Court of Appeals as controlling. *In re Morey Machinery Co. v. Great Western Industrial Machinery,* 507 F.2d 987 (1975). There the court followed the liberal lead of the Ninth Circuit and held that there was nothing in the relevant Florida statute

> ... which requires that the financing statement be a separate piece of paper from the security agreement or that any particular words be used to evidence the security interest. The agreement must merely provide for a security interest so that a third party might know that an interest exists in a particular piece of property.

Notwithstanding the Fifth Circuit's holding in *Morey, supra,* this Court is of the opinion that although it may not be necessary to present a separate formal document entitled "Security Agreement" to establish a security interest, a standard form financing statement alone does not constitute a security agreement without any reference to any other documents. Official Comment 2 to Uniform Commerical Code Article 9–402 explains that the financing statement alone "indicates merely that the secured party who has filed *may* have a security interest in the collateral described." In addition, the Uniform Commercial Code requirements for the creation of a security interest are simple and clearly set forth. It is not unreasonable to require that a creditor comply with the minimal requirements of Article Nine.

In this case, the only documents which Winfield presented into evidence are the contract entered into between the Debtor and Winfield, and the UCC–1. This Court is satisfied that these documents alone are insufficient to demonstrate that the Debtor intended to create a security interest in favor of Winfield. Based on the foregoing, this Court is satisfied that the Motion for Relief from Stay and for Adequate Protection should be denied.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that Winfield's Motion to Lift Stay and for Adequate Protection be, and the same is hereby, denied.

DONE AND ORDERED.