BENJAMIN F. DOWELL AND MARY VIRGINIA DOWELL, Plaintiffs-Appellants v.
D.R. KINCAID CHAIR COMPANY, Defendant-Appellee

No. COA96-446

(Filed 4 March 1997)

### Secured Transactions § 30 (NCI4th)— security agreement— financing statement—after-acquired goods

Plaintiff secured creditors did not have a security interest in the debtor's after-acquired property where the security agreement was unambiguous and did not include after-acquired collateral, notwithstanding the financing statement included after-acquired equipment. The security agreement, not the financing statement, established the scope or limits of plaintiffs' security interest. N.C.G.S. § 25-9-203.

**Am Jur 2d, Secured Transactions §§ 160, 163, 167, 168.**

**Sufficiency of debtor's signature on security agreement or financing statement under UCC §§ 9-203 and 9-402. 3 ALR4th 502.**

Appeal by plaintiffs from order entered 22 February 1996 by Judge Zoro J. Guice, Jr., in Burke County Superior Court. Heard in the Court of Appeals 9 January 1997.

*Tate, Young, Morphis, Bach & Taylor, L.L.P., by Paul E. Culpepper, for plaintiff appellants.*

*Byrd, Byrd, Ervin, Whisnant, McMahon & Ervin, P.A., by Robert C. Ervin, for defendant appellee.*

COZORT, Judge.

In this action, plaintiffs are the secured parties in an agreement for the sale of plaintiffs' business. The security agreement covered, among other things, the equipment then being used by the business. The UCC financing statement filed in conjunction with the security agreement listed as collateral, among other things, after-acquired equipment. The question presented by this appeal is whether plaintiffs have a security interest in the after-acquired property. We hold that the financing statement does not amend the security agreement and that plaintiffs have no security interest in the after-acquired property. The facts and procedural history follow.

DOWELL v. D.R. KINCAID CHAIR CO.

[125 N.C. App. 557 (1997)]

Prior to 16 January 1986, plaintiffs Benjamin F. and Mary Virginia Dowell, Regina K. Long, and Teresa G. Wise were the sole shareholders of Burke Wood Products, Inc. (Burke Wood), a business which manufactured wood frames for furniture in Burke County, North Carolina. On 16 January 1986, the shareholders sold all of the common stock of Burke Wood, along with the real and personal property used in connection with Burke Wood, to Suggs & Hardin Upholstery Company, Inc. (Suggs & Hardin), a North Carolina corporation.

As part of the purchase of Burke Wood stock by Suggs & Hardin, Suggs & Hardin signed a Promissory Note promising to pay plaintiffs Benjamin Dowell and Mary Dowell $475,000.00. Further, Suggs & Hardin executed a Deed of Trust naming plaintiffs Benjamin and Mary Dowell as beneficiaries to secure payment of the $475,000.00. As additional security, Suggs & Hardin also signed a security agreement, with Burke Wood as guarantor, granting a security interest in all inventory, equipment, accounts receivable, and fixtures used in connection with Burke Wood. This security agreement included an attached machinery list which did not mention after-acquired property. In conjunction with the security agreement, plaintiffs and Burke Wood signed a financing statement which was filed with the Burke County Register of Deeds, and the North Carolina Secretary of State, covering "[a]ll equipment, inventory, accounts receivable, and fixtures, *now or hereafter* attached to or used in connection with improvements to the real property owned by Burke Wood Products, Inc. located at Route 4, Box 777W, Hickory, North Carolina." (Emphasis added.) This UCC filing was continued in effect by the filing of a UCC-3 instrument on 15 January 1991, with the Burke County Register of Deeds and with the North Carolina Secretary of State.

On 27 August 1990, a Modification Agreement was signed between Burke Wood and plaintiffs releasing Suggs & Hardin from liability and leaving Burke Wood as the sole guarantor of the remaining debt owed to plaintiffs. Moreover, on the same date, a Stock Purchase Agreement was entered between Suggs & Hardin, D. Alan Reinhardt, plaintiffs Benjamin and Mary Virginia Dowell, and Kay Watts, wherein plaintiffs permitted the assumption of the Suggs & Hardin obligation by Reinhardt and Burke Wood. Plaintiffs also released Suggs & Hardin from any obligations under the Note. Burke Wood subsequently declared bankruptcy, while still owing plaintiffs $256,360.96. The building and equipment of Burke Wood were sold, and after the proceeds of those sales were applied, the outstanding debt due to plaintiffs was reduced to $108,566.87.

After the signing of the original security agreement in 1986, Burke Wood purchased a Bacci Copy Lathe and a 24 Spindle Master Carver, machines to be used in connection with Burke Wood's manufacturing operation located at Route 4, Box 777W, Hickory, North Carolina. It was later determined that sometime prior to 19 November 1993, Burke Wood transferred ownership of the Bacci Copy Lathe to Kings Creek, Inc., and transferred ownership of the 24 Spindle Master Carver to Foothills Wood Products, Inc., without any release or cancellation by plaintiffs of the financing statement previously described. However, both machines remained on the premises of Burke Wood until the time they were transferred to defendant D.R. Kincaid Chair Company, Inc. (Kincaid).

On or about 19 November 1993, defendant Kincaid purchased the Bacci Copy Lathe from Kings Creek, Inc., and the 24 Spindle Master Carver from Foothills Wood Products, Inc. Defendant paid $20,000.00 to Kings Creek, Inc., and $20,000.00 to Foothills Wood Products, Inc. Prior to purchasing these two pieces of equipment, agents of defendant communicated with D. Alan Reinhardt, who represented both Kings Creek, Inc., and Foothills Wood Products, Inc. D. Alan Reinhardt repeatedly advised agents of defendant company that the Bacci Copy Lathe and the 24 Spindle Master Carver were not subject to any liens. In reliance on these representations, defendant alleged that it had no knowledge of any security interest, lien or encumbrance on the equipment.

After defendant purchased the Bacci Copy Lathe and the 24 Spindle Master Carver, plaintiffs demanded that defendant company return the equipment to plaintiffs on the ground that those items were subject to plaintiffs' security interest. Defendant refused to return the Bacci Copy Lathe and the 24 Spindle Master Carver.

On 20 February 1995, plaintiffs filed suit against defendant seeking the return of the lathe and the carver. After appropriate responsive pleadings were filed, plaintiffs and defendant filed motions for summary judgment. On 22 February 1996, the trial court granted defendant's motion for summary judgment, holding that plaintiffs have no security interest in the subject property, and dismissed plaintiffs' action. Plaintiffs appeal.

Plaintiffs argue that the trial court committed reversible error by granting defendant's motion for summary judgment based on the conclusion that plaintiffs did not have a valid security interest in the Bacci Copy Lathe and the 24 Spindle Master Carver. It is undisputed

that the Bacci Copy Lathe and the 24 Spindle Master Carver were not owned by Burke Wood at the time that the Security Agreement was executed. Both the Bacci Copy Lathe and the 24 Spindle Master Carver were after-acquired property under the Uniform Commercial Code. The question presented on appeal is whether the terms of the security agreement or the terms of the financing statement determine if after-acquired collateral is subject to a security interest.

Resolution of this issue involves interpretation of certain provisions of the Uniform Commercial Code. N.C. Gen. Stat. § 25-9-203(1) (1995) provides that "a security interest is not enforceable against the debtor or third-parties . . . unless (a) the collateral is in the possession of the secured party . . . or the debtor has signed a security agreement which contains a description of the collateral . . . ." The Amended Official Comment to § 25-9-203 states that the section requires a writing, the debtor's signature, and a description of the collateral in order for a security agreement to exist. A financing statement, on the other hand, serves as notice to third parties that a security interest may be held in the property. N.C. Gen. Stat. § 25-9-402 (1995).

Plaintiffs contend that the financing statement signed by the original debtor and plaintiffs sufficiently establishes a security interest in the after-acquired property, or in the alternative, that the security agreement and financing statement when interpreted together created a security interest in the after-acquired property. Plaintiff argues that our Supreme Court in *Evans v. Everett*, 279 N.C. 352, 183 S.E.2d 109 (1971), held that so long as a financing statement meets the requirements of N.C. Gen. Stat. §§ 25-9-105(1)(h) and 25-9-203(1)(b), it may serve as a security agreement. Thus, plaintiffs contend, the financing statement itself created a security interest in the after-acquired property. In the alternative, plaintiffs contend, quoting from *Evans*, that a security interest was created by interpreting the financing statement and the security agreement together: "Although the Code contemplates the execution of two separate writings, it does not prohibit the combination of a security agreement and a financing statement." *Evans*, 279 N.C. at 357, 183 S.E.2d at 112. We disagree.

We find the instant case distinguishable from *Evans*. In *Evans*, our Supreme Court considered whether a financing statement could serve as the security agreement. No security agreement was executed in *Evans*, unlike in the instant action. Because a security agreement

exists in the case below, there is no necessity to use the provisions in the financing statement to serve as the security agreement.

Moreover, it has been noted that it is the security agreement, and not the financing statement, which defines the extent of the security interest involved. *Northwest Acceptance Corp. v. Lynnwood Equipment*, 841 F.2d 918 (9th Cir. 1988). If a conflict occurs between the property used in the financing statement on file and that used in the security agreement, the security agreement prevails. *Jones & Laughlin Supply v. Dugan Production Corp.*, 508 P.2d 1348 (N.M. 1973) (citing Ronald A. Anderson, Anderson on *The Uniform Commercial Code* § 9-204:9 (3d ed. 1996)). Further, the financing statement does not serve to add collateral not described in the security agreement. *Kurtz v. Illinois Nat. Bank*, 534 N.E.2d 1007 (Ill. App. 3d 1989). Security agreements must contain after-acquired property clauses; thus, if the after-acquired property clause is not contained in the security agreement, inclusion in the financing statement does not subject the property to a security interest. *Idaho Bank & Trust Co. v. Cargill, Inc.*, 665 P.2d 1093 (Idaho 1983) (citing Ronald A. Anderson, Anderson on *The Uniform Commercial Code* § 9-204:9)).

Furthermore, other jurisdictions which have considered the question involved in this action have held that it is the language in the security agreement, not the financing statement, that determines what collateral is subject to a security interest. *See Wollenberg v. Phoenix Leasing, Inc.*, 893 P.2d 4 (Ariz. App. 1994); *Central Production Credit v. Hopkins*, 810 S.W.2d 108 (Mo. App. 1991) (holding that "[t]he intent to create a security interest in after-acquired property must be ascertained and judged by the language of the security agreement, not the financing statement[]"); *Kurtz*, 534 N.E.2d at 1012 (holding that "[w]hen a financing statement describes a greater quantity of property than that described in the corresponding security agreement, the security interest is defined by the narrower description contained within the security agreement[]"); *Federal Land Bank v. Bay Park Place*, 412 N.W.2d 222 (Mich. App. 1987) (holding that "[a]lthough a financing statement may be used to assist in the interpretation of the security agreement, the financing statement does not create a security interest and cannot extend a security interest beyond what has been unambiguously described in a security agreement[]").

In the case below, the security agreement was unambiguous and did not include after-acquired collateral. We decline to extend the scope of the security interest beyond that which was set out in the

security agreement. Accordingly, we hold that the security agreement, not the financing statement, establishes the scope or the limits of the security interest. To hold as plaintiffs request would render security agreements obsolete. Therefore, we find the trial court did not err in granting defendant's motion for summary judgment.

Affirmed.

Judges JOHN and McGEE concur.