WALLACE, Judge.
In this case we are called upon to decide a question of first impression in Florida: Does Article 9 of the Uniform Commercial Code permit the incorporation of the description of collateral contained in a financing statement into a security agreement in order to reflect the parties’ intention with respect to the description of the collateral securing the debtor’s obligation? We answer this question in the affirmative, and we affirm the trial court’s order.

The Facts

This case involves a dispute between a bank and a consignor concerning their respective rights in oriental rugs delivered by the consignor to a retailer that went out of business. At the time of the hearing in the trial court, the oriental rugs and the proceeds of some of the rugs that had been sold were in the custody of a court-appointed receiver of the retailer’s business. The history of the events leading to the dispute between the parties follows.
On December 11, 2000, Marine National Bank of Naples, N.A. (the Bank), made a *1171 secured loan in the amount of $400,000 to The Sawgrass Group, Inc., a Florida corporation, d/b/a “Inside Out by Patio Plus” (the Retailer). The loan was evidenced by a promissory note, but the parties did not execute a separate security agreement. With respect to security for the loan, the note provided as follows:
2. Security for this Note. This note is secured by, inter alia, UGC-1 Financing Statements on furniture, fixtures and equipment, and all business assets and Assignment of the Life Insurance policies for Russell E. Slean and Trudy C. Slean.
The Retailer and the Bank also executed a financing statement that was filed with the Secretary of the State of Florida on December 15, 2000.
The financing statement was in the standard form. It included the following description of the collateral:
All accounts receivable, intangibles, raw materials, goods in process, finished goods, machines, machinery, furniture, furnishings, fixtures, vehicles, equipment, accounts receivable, book debts, deposits, leases, notes, chattel paper, acceptances, rebates, incentive payments, drafts, contracts, contract rights, choses in action, and general intangibles, whether now owned or hereafter acquired, and all attachments, accessions and additions thereto, substitutions, accessories, and equipment therefor, and replacements and proceeds, now or hereafter located on or in any way affiliated with the premises described in this financing statement or any improvements to be located thereon.
The description of the collateral contained in the security provision of the note and in the financing statement differ in several respects. The difference most pertinent to the parties’ dispute is that the description of the collateral in the financing statement includes a reference to after-acquired property while the description in the note does not.
Approximately two and one-half years after the inception of the Bank’s loan, L. King Dickason, Jr., d/b/a “Oriental Rug Company” (the Consignor), entered the picture. The Consignor is in the business of consigning oriental rugs to retail businesses for sale to the general public. On or about July 7, 2008, the Retailer entered into a written consignment agreement with the Consignor, and the Consignor delivered a substantial quantity of oriental rugs to the Retailer.[1] Pursuant to the agreement, the Retailer was required to remit a specified percentage of the sale price of each rug sold to the Consignor. The Retailer was permitted to retain the balance. The agreement provided further: “IT IS UNDERSTOOD THAT THESE RUGS ARE THE SOLE PROPERTY OF ORIENTAL RUG COMPANY and are only consigned to PATIO PLUS dba INSIDE/OUT until they are removed.” The Retailer apparently planned to sell the rugs as part of a going-out-of-business sale. The Consignor filed a financing statement for the consignment, but the financing statement identified the Retailer as “Patio Pius/Inside Out” instead of as “The Sawgrass Group, Inc.”
About the time that the Consignor delivered the oriental rugs to the Retailer, the Bank learned from a newspaper advertisement that the Retailer was conducting a “going-out-of-business” sale. The Bank’s loan to the Retailer still had a substantial balance outstanding, and the Bank was understandably concerned about its position and the adequacy of the security for *1172 its loan. On August 11, 2003, the Bank filed an action against the Retailer. In conjunction with the lawsuit, the Bank sought and obtained the appointment of a receiver to assume the operations of the Retailer and to . liquidate its inventory. The trial court entered an order permitting the Consignor to intervene in the Bank’s action against the Retailer. The receiver continued the sale of the rugs held on consignment and deposited the proceeds of their sale into a segregated account pending a determination by the trial court concerning who was entitled to the rugs and the proceeds of their sale.
The Consignor subsequently filed a motion seeking possession of the rugs that had not yet been sold and the turnover of the Consignor’s agreed percentage of the proceeds of the rugs that had been sold by the receiver. After a hearing, the trial court denied the Consignor’s motion for the return of the rugs and the turnover of the sales proceeds. The Consignor appeals. We have jurisdiction pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(C)(ii).

The Parties’ Arguments

A brief review of the parties’ arguments will help define the issue before us. The Bank argues that its security interest applies to after-acquired property such as the oriental rugs because the description of the collateral contained in the security provision of the note must be read together with the broader description of the collateral contained in the financing statement. Unlike the security provision in the note, the description of the collateral in the financing statement has an after-acquired property clause. The Bank argues further that its security interest in the rugs is entitled to priority over the Consignor’s security interest because the Consignor failed to perfect his security interest.
The Bank’s argument on the priority issue is as follows: Article 9 of the UCC applies to consignments. § 679.1091(l)(d), Fla. Stat. (2003). “The security interest of a consignor in goods that are the subject of a consignment is a purchase-money security interest in inventory.” § 679.1031(4). The Bank correctly points out that the Consignor’s financing statement is ineffective because it provided only the Retailer’s trade name. See § 679.5031(l)(a), (3). Therefore, the Bank’s security interest in after-acquired property attached to the rugs pursuant to section 679.319(1), and that interest has priority over the Consign- or’s unperfected security interest pursuant to section 679.322(l)(b).[2]
The Consignor concedes that the security provision in the Bank’s note was sufficient to grant the Bank a security interest in some of the Retailer’s property. The parties’ dispute concerns the extent of the property to which the Bank’s security interest applies. The Consignor also concedes that because his financing statement was ineffective, his security interest in the rugs was not perfected. Nevertheless, the Consignor contends that he is entitled to possession of the rugs and the proceeds of their sale because the Bank’s security interest does not apply to after-acquired property such as the oriental rugs. Although the Bank’s financing statement does include an after-acquired property clause, the Consignor contends that it is the description of the collateral contained in the security agreement — not the financing statement — that defines the extent of the property that is subject to the secured party’s security interest. The Consignor concludes that he is entitled to the return *1173 of the rugs and their proceeds pursuant to the terms of the consignment agreement because the Bank’s security interest does not apply to after-acquired property such as the rugs.[3]

The Issue Presented

The issue before us is whether the Bank and the Retailer intended to include after-acquired property in the description of the collateral securing the note and, if so, whether the documents they executed were effective to accomplish that result. The determination of this issue turns on the answers to two questions:
(1) Did the parties intend to incorporate the description of the collateral in the financing statement into the security provision of the note?
(2) Is such incorporation permitted under Florida’s UCC in order to create a security interest in after-acquired property?

The Standard of Review

The dispositive issue concerns the creation of an enforceable security interest, which may involve questions of law or fact. Our record consists entirely of copies of the pertinent documents, the Consignor’s motion, the trial court’s orders, and the arguments of counsel at the hearing in the trial court. The trial court heard no testimony and made no findings of fact. Because we are in the same position to review the documentary evidence as the trial court and review questions of law independently, our standard of review is de novo.

Analysis

We begin our analysis by examining the security provision of the note, which served as the security agreement in the Bank’s loan transaction with the Retailer. A description of the collateral is a required term of a written security agreement when the-collateral is not in the possession of the creditor. § 679.203(l)(a), Fla. Stat. (2000). The Official Comment. to UCC § 9-203 refers to UCC § 9-110 as the standard for determining whether a description satisfies the requirements of this section. Section 679.110 provides that a description of collateral- “is sufficient whether or not it is specific if it reasonably identifies what is described.” Unlike a UCC-1 financing statement, the purpose of which is to encourage further inquiry by third parties, the purpose of the security agreement is to express the intent of the parties. It is therefore necessary that the security agreement sufficiently describe the collateral to permit identification. See generally Robert L. Young, Creation of Security Interest, in Secured Transactions in Florida § 5.7 (Fla. Bar CLE 1996).
In the security provision of the note, the relevant phrase is “[t]his Note is secured by ... UCC-1 Financing Statements on ... all business assets.” By itself, the phrase “all business assets” is not necessarily meaningless as the Consignor contends. Under the section titled “Sufficiency of description” currently in effect, a description of collateral such as “all the debtor’s assets” or “all the debtor’s personal property” or words of similar import “does not reasonably identify the collateral for purposes of the security agreement.” § 679.1081(3), Fla. Stat. (2003). However, this provision is absent from the statute in effect at the time the note and the financing statement were executed. § 679.110, Fla. Stat. (2000).[4] Under the *1174 applicable statute, a description is sufficient “if it reasonably identifies what is described” — without limitation on the language that may be used. See generally Am. Rest Supply Co. v. Wilson, 371 So.2d 489, 490 (Fla. 1st DCA 1979).
The security provision of the note links the phrase “all business assets” to a reference to “Financing Statements.” This phrasing reasonably permits identification of the property described in the financing statement. The Consignor has not demonstrated that the financing statement could be confused with any other document. The Consignor concedes that the financing statement, executed contemporaneously with the note, refers to after-acquired property. By the parties' plain language, we conclude that they intended to incorporate the financing statement, into the description of the collateral securing the note.
Nothing in the UCC prohibits parties from integrating several documents to create a security agreement. See, e.g., Cook v. Theme Park Ventures, Inc., 633 So.2d 468, 470 (Fla. 5th DCA 1994). In a security agreement, “[Collateral may be described by means of incorporation by reference to other identifiable documents.” Terpstra v. Michelosen (In re Prod. Design & Fabrication, Inc.), 182 B.R. 803, 806 (Bankr.N.D.Iowa 1994). The leading case is In re Nickerson & Nickerson, Inc., 452 F.2d 56, 57 (8th Cir.1971), which held that a deficient description of collateral in a security agreement can be clarified by looking to a financing statement referenced in the security agreement. In Nickerson, the description of collateral in the security agreement between a large retailer and the creditor was ambiguous as to whether the intended collateral was merchandise located in a single state or merchandise located in all states in which the retailer had stores. However, the security agreement stated, “See attached schedules for a list of property covered by this Security Agreement.” Id. at 56. Attached to the security agreement were the financing statements, which' clarified that the collateral was merchandise located in all states. Id. The court held that these documents “reasonably identified]” the collateral. Id. at 57 (quoting language identical to section 679.110). “The test of sufficiency of a description laid down by [the UCC] is that the description do the job assigned to it— that it make possible the identification of the thing described.” Id.
Nickerson represents the majority view. E.g., Dietz v. Hormel Employees Credit Union (In re Cantu), 238 B.R. 796, 800 (8th Cir. BAP 1999); Fed. Deposit Ins. Corp. v. Coones (In re Coones), 954 F.2d 596, 599 (10th Cir.), vacated on other grounds, 506 U.S. 802, 113 S.Ct. 31, 121 L.Ed.2d 4 (1992); Maxl Sales Co. v. Critiques, Inc., 796 F.2d 1293, 1298 (10th Cir. 1986); Meeks v. First Bank of S. Ark. (In re Tracy’s Flowers & Gifts, Inc.), 264 B.R. 1, 7 (Bankr.W.D.Ark.2001); In re McAllister, 267 B.R. 614, 623 (Bankr.N.D.Iowa 2001); In re Moody, 62 B.R. 282, 285 (Bankr.N.D.Miss.1986); Conn. Bank & Trust Co. v. Kennedy (In re Modern Eng’g & Tool Co.), 25 U.C.C. Rep. Serv. (CBC) 580, 1978 WL 23498 (D.Conn.1978); In re Ctr. Auto Parts, 6 U.C.C. Rep. Serv. (CBC) 398, 1968 WL 9209 (C.D.Cal.1968); Agricredit Acceptance Co. v. Singleton, 767 So.2d 137, 140-41 (La.App.2d Cir. 2000).
We are mindful that a financing statement should not be construed to enlarge the description of the collateral in the security agreement. See Tri-County Livestock Auction Co. v. Bank of Madison, *1175 228 Ga. 325, 185 S.E.2d 393, 396 (1971). Here, the reference made by the security provision of the note to the financing statement clarifies the parties’ intent to restrict the meaning of the phrase “all business assets” in the note to the specifications of the financing statement. The “description of collateral contained in a financing statement may have the effect of restricting the security interest created in a security agreement but cannot enlarge it.” Nolden v. Plant Reclamation (In re Amex-Protein Dev. Corp.), 504 F.2d 1056, 1061 (9th Cir.1974). That is the case here.
The cases relied on by the Consignor miss the mark. In In re North Redington Beach Associates, Ltd., 97 B.R. 90, 91 (Bankr.M.D.Fla.1989), the debtor never signed a security agreement. The court held that the financing statement and other documents read together did not comprise a security agreement because there was no language indicating the debtor had granted a security interest in favor of the creditor. Id. at 92. Thus the issue in North Redington Beach was the necessity of a security agreement. In this case, the Consignor concedes that the security provision of the note granted a security interest in favor of the Bank.
The case of Dowell v. D.R. Kincaid Chair Co., 125 N.C.App. 557, 481 S.E.2d 670 (1997), is likewise distinguishable. In Dowell, the parties executed a security agreement that listed specific equipment as collateral. Id. at 671. Insofar as the opinion reveals, the security agreement contained a complete list of the equipment; but it did not reference any other document. At the same time, the creditor filed a financing statement that included an after-acquired equipment clause. Id. The Dowell court held that the financing statement, by itself, did not create a security interest in after-acquired equipment. The court also held that the financing statement could not serve to enlarge the description of collateral contained in the security agreement. Id. at 672. Thus the issue in Dowell was not the interpretation of a security agreement by express reference to- another document.

Conclusion

Reading the security provision of the note and the financing statement together evinces the parties’ intent to include the after-acquired property in the description of the collateral to which the Bank’s security interest- applied. Article 9 of the UCC permits the incorporation of the description of the collateral contained in the financing statement into the parties’ security agreement in order to reflect the parties’ intent in this regard. The Bank’s perfected security interest in the oriental rugs and the proceeds of their sale has priority over the Consignor’s unperfected purchase-money security interest. Therefore, we affirm the trial court’s order.
Affirmed.
STRINGER and CANADY, JJ., Concur.

. Although the number of the oriental rugs and their value is not indicated in our record, the consignment agreement required the Retailer to insure the rugs against loss in the amount of $302,000.

. The Bank also argues that even if the Consignor had properly perfected his security interest, the Bank's security interest would still have priority because the Consignor failed to comply with the requirements of section 679.324(2)(b). We need not address this argument because the Consignor concedes that his security interest was not perfected.

. The Consignor also raises several challenges to the validity and effectiveness of a "restated security agreement,” which the Bank and the Retailer executed before- the trial court conducted a hearing on the Consignor's motion. Based on our disposition of this case, we need not address these issues.

. Following substantial revisions to UCC Article 9 by the National Conference of Commis *1174 sioners on Uniform State Laws and the American Law Institute, the Legislature extensively renumbered and revised chapter 679 effective January 1, 2002. Ch. 2001-198, Laws of Fla.