Jason and Rachalle **LANKHORST**, individually and on behalf of all others similarly situated, Plaintiffs,

v.

**INDEPENDENT SAVINGS PLAN COMPANY, d/b/a ISPC,** Defendant.

**Civil No. 11–cv–390.**

United States District Court, M.D. Florida, Jacksonville Division.

Signed Jan. 14, 2014.

Order Denying Amendment Feb. 3, 2014.

Order Denying Relief from Judgment Feb. 19, 2014.

**1360**

Bambi Lynn Drysdale, Jacksonville Area Legal Aid, Inc., Jacksonville, FL,

Brian W. Warwick, Janet R. Varnell, Steven Thomas Simmons, Jr., Varnell & Warwick, PA, Lady Lake, FL, William C. Bielecky, William C. Bielecky, PA, Tallahassee, FL, for Plaintiffs.

Andrew J. Patch, Murray B. Silverstein, Greenberg Traurig, LLP, Tampa, FL, E. Lanny Russell, Jonathan Russell Huffman, Smith, Hulsey & Busey, Jacksonville, FL, for Defendant.

## MEMORANDUM AND ORDER

PAUL A. MAGNUSON, District Judge.

This matter is before the Court on the parties' cross Motions for Summary Judgment, Plaintiff's Motion to Strike Expert Testimony of Jeffrey Davis, and Defendant's Motion to Exclude the Testimony of David Pelligrinelli. For the reasons that follow, Defendant's Motion for Summary Judgment is granted, Plaintiff's Motion for Summary Judgment is denied, and the remaining Motions are denied as moot.

## BACKGROUND

This litigation arises out of the sale and financing of water treatment equipment. On February 24, 2010, a representative of Water Technologies, Inc. of Florida (WET)[1] came to Plaintiffs Jason and Rachalle Lankhorst's home and made a sales presentation about the benefits of having an AvantaPure water conditioning system. Plaintiffs agreed to purchase the equipment for $6,995 and signed a WET purchase agreement. (Purchase Agreement (Docket No. 141–1 at 51).) When the Plaintiffs inquired about financing, the WET representative told them that although WET did not provide financing, he could help them arrange financing. When Plaintiffs asked about interest rates, he told them that he had seen interest rates

---

1. Plaintiffs voluntarily dismissed WET from the case for unspecified reasons. (Docket No. 38.)

vary between .5 percent and 20 percent. (R. Lankhorst Dep. (Docket No. 141–1) at 20.) Plaintiffs filled out a generic Credit Application Information form during the initial meeting, which was used to perform a credit check. (*Id.* at 22; Credit Appl. (Docket No. 141–4).)

The next day, WET installed the water treatment equipment outside of Plaintiffs' home. (R. Lankhorst Dep. at 24.) Photographs show that the equipment is plumbed to the outside of the house, connected through piping to the water supply, and plugged into an exterior electrical outlet. (Docket No. 141–16.)

Defendant Independent Savings Plan Company (ISPC) is a consumer finance company that ultimately offered Plaintiffs financing. After the installation, Plaintiffs signed an ISPC Open–Ended Credit Application and Agreement, which offered financing with a 17.9 percent interest rate. (*See* ISPC Agreement (Docket No. 141–5 at 16–18).) Plaintiffs complained about the high interest rate and ISPC permitted them to sign a new agreement which deferred payment and interest for the first year. (*See* ISPC Account Statement (Docket No. 141–5 at 21).) The forbearance period lapsed on March 3, 2011, just before this date, Plaintiffs made a $168 payment. (Docket No. 141–5 at 35.) Plaintiffs have made no other payments under the agreement, however, and are in arrears in the amount of $8,604.86. Plaintiffs are still using the equipment. (R. Lankhorst Dep. at 28.)

In the ISPC Agreement, Plaintiffs granted ISPC a security interest to ensure repayment of the loan:

YOU HEREBY GRANT TO ISPC *A PURCHASE MONEY SECURITY INTEREST IN ANY PURCHASES YOU CHARGE TO YOUR ACCOUNT.* YOU AGREE AND ACKNOWLEDGE THAT ISPC HAS AND SHALL CONTINUE TO HAVE A SECURITY INTEREST IN SAID PURCHASES AS LONG AS YOUR ACCOUNTS ARE OPEN, WHETHER ANY OF SAID PURCHASES IS A FIXTURE OR NOT, AND REGARDLESS OF THE EXACT NATURE OF THE SECURITY INTEREST APPLICABLE TO ANY SPECIFIC PURCHASE...

(ISPC Agreement ¶ 11 (emphasis added).) ISPC perfected its security interest by filing a UCC–1 Financing Statement, which identifies the "Water Conditioning Equipment" as collateral. (UCC Financing Statement Form (Docket No. 141–21).) ISPC designated the filing as a "fixture filing" in the event the water treatment equipment is deemed a fixture under state law. (*Id.;* Wilkosz Dep. (Docket No. 151–9) at 22–23; ISPC Collection Department Procedures (Docket No. 141–20 at 9).) Plaintiffs refinanced their home mortgage on March 6, 2012. It is undisputed that ISPC's security interest did not impede the refinancing in any respect.

On February 22, 2011, Plaintiff sued ISPC on behalf of themselves and others similarly situated in Clay County, Florida. ISPC removed the case to federal court. After several amendments to the Complaint, Plaintiffs allege that ISPC violated the Truth in Lending Act (TILA) in Counts One and Two, and the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) in Count Three. (Docket No. 63.) Specifically, in Count One, Plaintiffs allege that ISPC violated 15 U.S.C. § 1637a(a)(9) by failing to disclose examples of the minimum payments and maximum repayment period under the terms provided in the credit agreement. In Count Two, Plaintiffs allege that ISPC failed to comply with Regulation Z, 12 C.F.R. § 226.15, which requires that consumers be given a three-day rescission period for all credit agreements secured

by a consumer's principal dwelling. In Count Three, which incorporates Count Two, Plaintiffs allege that, by violating TILA, ISPC has also violated FDUTPA. Plaintiffs seek statutory damages as to Counts One and Two and injunctive relief as to Count Three. ISPC in turn filed a counterclaim against Plaintiffs for breach of contract for failure to pay the balance owed on the water treatment equipment. (Docket No. 67 at 18–20.)

On September 26, 2012, the Court certified the case as a class action as follows:

> All ISPC customers in the state of Florida that entered into an ISPC Open Ended Credit Agreement for the purchase of a water treatment system for their principal dwelling from Water Equipment Technologies of Florida, Inc., between February 22, 2010, and October 18, 2013.[2]

(Docket No. 105 at 21.)

The parties now cross move for Summary Judgment on Plaintiffs' claims. Plaintiffs have not moved to dismiss ISPC's counterclaim.

## DISCUSSION

Summary judgment is proper only if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Burton v. City of Belle Glade,* 178 F.3d 1175, 1187 (11th Cir.1999).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to

judgment as a matter of law. *O'Ferrell v. United States,* 253 F.3d 1257, 1265 (11th Cir.2001). When opposing a motion for summary judgment, the nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials and must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### A. TILA

The parties agree that Counts I and II of the Third Amended Complaint rise or fall on whether the ISPC Agreement created a security interest in Plaintiffs' principal dwelling. If the answer to that question is no, there is no dispute that the TILA does not apply and the claims should be dismissed.

### 1. The TILA Generally

■ The TILA regulates consumer credit transactions and is designed "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and to avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). To that end, the TILA requires creditors to provide consumers with "clear and accurate disclosures of terms dealing with things like

---

**2.** Consistent with the Court's previous Order granting Plaintiffs' Motion for Class Certification, the class period closed on the date that

notice was issued to the class. (*See id.;* Docket No. 188–1.)

finance charges, annual percentage rates of interest, and the borrower's rights," including the right of rescission. *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998). The TILA further provides that certain other disclosures must be made when a loan made in a consumer credit transaction is secured by the consumer's "principal dwelling."

At issue here are the requirements that the creditor provide examples of the minimum payments and maximum repayment period 15 U.S.C. § 1637a(a)(9) (Count I), and that the consumer has the right to "rescind the transaction until midnight of the third business day following the consummation of the transaction or delivery of the material disclosure and rescission forms, whichever is later," 15 U.S.C. § 1635(a) (Count II). The TILA provides that creditors who fail to comply with its disclosure requirements are subject to civil liability. 15 U.S.C. § 1640(a).

It is undisputed that ISPC did not meet either disclosure requirement. Rather, ISPC argues that it was not obligated to make these disclosures because the loan is secured by the water treatment equipment, not Plaintiffs' principal dwelling. Plaintiffs contend that the ISPC Agreement and subsequent UCC–1 filing effectively created a lien on their home, either contractually or by operation of law, or both, thus invoking the TILA.

**2. The ISPC Agreement**

■ The first stop in the analysis is the parties' agreement. Under Florida law, a "security agreement" is an "agreement that creates or provides for a security interest." Fla. Stat. § 679.1021(1)(uuu). The purpose of the security agreement is to express the parties' intentions with respect to that interest. *Dickason v. Marine National Bank of Naples*, 898 So.2d

1170, 1173 (Fla.Dist.Ct.App.2005). Florida law therefore requires that the security agreement contain a description of the collateral sufficient to "reasonably identif[y] what is described." Fla. Stat. § 679.1081(1).

■ As noted, the ISPC Agreement conveys a security interest to ISPC in "any purchases you charge to your account." (ISPC Agreement ¶ 11.) It is undisputed that the purchase "charged to the account" is the water treatment equipment sold by WET. In other words, the ISPC Agreement expressly provides that the security interest is in the water treatment equipment, rather than the home as a whole. This interpretation of the ISPC Agreement is supported by the UCC–1 Financing Statement, which unequivocally identifies the collateral associated with the ISPC Agreement as "Water Conditioner Equipment." (UCC Financing Statement Form.)

Plaintiffs argue, however, that the note to paragraph 11 somehow converts the security interest in the water treatment equipment into a lien on Plaintiffs' home. The note reads:

> PURCHASES THAT ARE "FIXTURES" ATTACH TO AND ARE LEGALLY TREATED AS PART OF THE HOUSE OR OTHER REAL PROPERTY, AND CONSEQUENTLY, UNDER THE LAW, THE SECURITY INTERESTS IN "FIXTURES" LIKEWISE ARE TREATED AND ENFORCED *SIMILARLY AS LIENS ON THE HOUSE OR OTHER REAL PROPERTY.*

(ISPC Agreement ¶ 11 (emphasis added).)

The Court is not satisfied that this language conveys a lien to ISPC in Plaintiffs' home. Rather, the note appears to instead simply caution that in the event the equipment is deemed a "fixture" under the law,

then the security interest may be enforced in manner similar to a property lien. Although the precise meaning of this language is far from clear, it plainly does not trump the substantive language contained in paragraph 11 and convert the security interest into a property lien.[3]

Plaintiffs also argue that the following language in paragraph 23 of the ISPC Agreement creates a security interest in their homes:

> Judgments resulting from an "Event of Default" hereunder and/or from any consensual UCC–1/lien/security interest as described herein, constitutes valid enforceable liens against YOUR homestead property and will be paid in full by YOU upon any sale, conveyance or mortgage financing of YOUR homestead property . . .

(*Id.* ¶ 23.) ISPC argues that this paragraph merely covers the possible effect of a *judgment* in the event of default, but does not by itself create a security interest in real property. Based on the plain language of the paragraph, the Court agrees. ISPC's security interest is contained in paragraph 11 of the ISPC Agreement. Paragraph 23 separately covers potential avenues of recovery ISPC may have in the event the creditor defaults on the loan, is then found liable for the default, and that liability is reduced to a judgment. This string of contingencies does not create a lien on Plaintiffs' homes.

### 3. Fixture Filing (Lien by Operation Law)

██ Plaintiffs next argue that ISPC's UCC–1 filing renders the security interest

a lien on their homes because ISPC stated that the financing statement is filed as a "fixture filing." Plaintiffs contend that this designation triggers Florida's fixture law under which fixtures are deemed "so related to particular real estate that an interest in them arises under real estate law." (Pls.' Supp. Mem. at 21.) This does not mean, however, that the security interest becomes a lien on the home to which the fixture is attached. Indeed, Florida law directly acknowledges that under certain circumstances, a fixture filing may take priority over subsequent encumbrances relating to the real property, but it does not convert the security interest in the fixture into a lien on the real property:

> A security interest in goods which are or become fixtures perfected with a financing statement that is filed as a fixture filing takes priority *as to the goods* over the conflicting interest of an encumbrancer or owner of the related real property arising subsequent to the perfection of such security interest or the affixing of the goods to the real property, whichever occurs later.

Fla. Stat. § 679.334(4) (emphasis added). Moreover, designating something as a fixture is not, by itself, dispositive: "Courts should not infer from a fixture filing that a secured party concedes that the goods are or will become fixtures." *Id.*, Official Comment 3. Indeed, here, it is unclear whether the equipment is a fixture.

Under Florida law,

> The term "fixtures" is generally used in reference to some originally personal chattel which has been actually or con-

---

**3.** ISPC explains that this language was required as part of a settlement with the state of Florida following complaints similar to those alleged here. (Assurance of Voluntary Compliance (Docket No. 141–24) ¶ 29(a).) ISPC argues, and the Court agrees, that this cautionary language—even if it accurately states

Florida law—does not alter the parties' agreement. Moreover, the AVC expressly states that it "shall not be construed as an admission of law, fact, liability, misconduct, or wrongdoing on the part of ISPC." (*Id.* ¶ 41.) The Court therefore does not rely on the AVC is reaching its decision.

structively affixed either to the soil itself or to some structure legally a part of such soil. It has been variously defined as denoting an article which was once chattel, but which, by being physically annexed or affixed to the realty by someone having an interest in the soil, has become accessory to it and a part and parcel of it; as signifying something so attached to the realty as to become, for the time being, a part of the freehold, as contradistinguished from a mere chattel; as something so annexed to the freehold that it cannot be removed without injury to the freehold.

*Dependable Air Conditioning & Appliances, Inc. v. Office of Treasurer & Ins. Com'r,* 400 So.2d 117, 119 (Fla.Dist.Ct. App.1981) (citation omitted). In determining whether an item is a fixture, a key factor is whether it "can be removed without material or substantial injury to the freehold." *Id.* For example, air conditioners, hot water heaters, sinks and plumbing attachments, dishwashers and disposal units, range hoods and drop-in ranges have been deemed personal property. *Id.* The record in this case demonstrates that although the equipment is attached to the house and its plumbing, it is not necessarily affixed to the house such that has become part and parcel to the house. Photographs of the equipment support this conclusion. Moreover, the equipment can be uninstalled and relocated if needed, thus indicating that its removal will not cause damage the house itself and therefore that the equipment is not a fixture. (ISPC Agreement ¶ 12.)

Regardless of whether the equipment is a fixture, however, regulations underlying the TILA expressly exclude "fixtures" from the definition of "security interest." *See* 12 C.F.R. § 226.2(a)(25) ("Security interest means an interest in property that secures performance of a consumer credit obligation and that is recognized by state or federal law. It does not include incidental interests such as interests in ... fixtures[.]"). The TILA also provides that for purposes of relevant disclosures, the term security interest "does not include an interest that arises solely by operation of law.[4] *Id.* Plaintiffs argue that the security interest arises in part from contract and in part by operation of law. Based on the Court's earlier analysis relating to the ISPC Agreement, the Court is not persuaded by this argument.

In sum, even if the water treatment equipment could be deemed a fixture, the law does not support the conclusion that ISPC has a security interest, or lien, in Plaintiffs' homes. The Court therefore dismisses Counts I and II of the Third Amended Complaint.

## B. FDUTPA

■ Count III alleges a violation of FDUTPA based on ISPC's alleged intentional withholding of financing until after the three-day cancellation period expired under the Florida Home Solicitation Sales Act (FHSSA), Fla. Stat. §§ 501.021 et seq. The practical effect of delaying the financing is that the equipment is installed before the homeowner learns the details of the financing. As in the case of the named Plaintiffs here, the interest rate was much higher than anticipated, but by the time the rate was disclosed to them, the equipment already had been installed.

ISPC argues that the FHSSA, and by extension FDUTPA, does not apply because ISPC did not solicit Plaintiffs in their homes, WET did. Plaintiffs respond that ISPC "conspired" with and "encouraged" WET to install the equipment within the rescission period. (Am. Compl. ¶¶ 67–

---

**4.** This is not the case for purposes of the right of rescission, which is not at issue here. *Id.*

68.) The record as developed and presented to the Court does not support this claim. There is simply no evidence that ISPC caused WET to install the equipment in violation of the FHSSA. Moreover, the Merchant Agreement between ISPC and WET expressly provides that WET is solely responsible for complying with applicable law, including the specific law at issue. (Docket No. 163 (filed under seal).) The Court therefore also dismisses Count III.

## CONCLUSION

There are no genuine issues of material fact precluding summary judgment in favor of ISPC. Accordingly, **IT IS HEREBY ORDERED that:**

1. Defendant's Amended Motion for Summary Judgment (Docket No. 138) is **GRANTED;**

2. Plaintiff's Motion for Partial Summary Judgment (Docket No. 136) is **DENIED;**

3. Plaintiff's Motion to Strike Expert Testimony of Jeffrey Davis (Docket No. 135) is **DENIED as moot;**

4. Defendant's Motion to Strike Testimony of David Pelligrinelli (Docket No. 140) is **DENIED as moot;**

5. Defendant's Motion for Miscellaneous Relief (Docket No. 187) is **DENIED as moot;** and

6. The parties' Motions in Limine (Docket Nos. 192, 195) are **DENIED as moot.**

## ORDER ON MOTION TO AMEND/CORRECT

This matter is before the Court on Plaintiffs' Motion to Amend/Correct. Plaintiffs contend that this Court made a plethora of errors in its Order granting Defendant's Motion for Summary Judgment and denying Plaintiffs' Motion for Partial Summary Judgment.

Plaintiffs' contentions are that the Court made errors of law in its analysis of Plaintiffs' claims. Those contentions are not appropriate for a Motion to Amend, but rather are arguments to be raised on appeal. Accordingly, **IT IS HEREBY ORDERED that** Plaintiffs' Motion (Docket No. 206) is **DENIED.**

## ORDER ON MOTION FOR RELIEF FROM JUDGMENT

This matter is before the Court on Plaintiffs' Motion for Relief from Judgment Based on Newly Discovered Evidence. Plaintiffs specifically point to their recent discovery that a UCC–1 lien was created on the Lankhorst's home as a result of Defendant's fixture filing. Plaintiffs argue that this fact undermines the entirety of the Court's Order granting summary judgment to Defendant.

Rule 60(b) allows a party to seek relief from a final judgment for reasons such as mistake, inadvertence, excusable neglect, newly discovered evidence, fraud, misrepresentation, or misconduct. Fed.R.Civ.P. 60(b)(1)-(6). Where, as here, a Rule 60(b) motion is based on newly discovered evidence, the moving party must establish that the evidence, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b). Fed.R.Civ.P. 60(b)(2); *see also* Fed.R.Civ.P. 59(b) (a motion for new trial must be filed no later than 28 days after the entry of judgment).

Plaintiffs' motion is without merit. The newly discovered evidence is certainly something that Plaintiffs could have uncovered, with reasonable diligence, before the summary judgment hearing. Furthermore, the new evidence does not affect the Court's summary judgment analysis. Accordingly, **IT IS HEREBY ORDERED**

that Plaintiffs' Motion (Docket No. 213) is **DENIED.**